## DOCKET NO. 13-10439

# United States Court of Appeals

*for the*

# Eleventh Circuit

CHARLES JACKSON FRIEDLANDER,

*Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Appellee.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA AT TAMPA
IN CIVIL DOCKET FOR CASE #: 8:12-cv-00723-JDW-TGW

(Hon. James D. Whittemore)

# BRIEF ON BEHALF OF APPELLANT

**JONATHAN I. EDELSTEIN**
OF COUNSEL TO:
LAW OFFICE OF ALAN ELLIS
**501 5th Avenue, Suite 514**
**New York, New York 10017**
**(212) 871-0571**

*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. Pro. 26.1 and Eleventh Circuit Rule 26.1-1, appellant

certifies that there are no persons or entities known to appellant, other than the parties,

who have an interest in the outcome of this appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant requests oral argument on this appeal.  Appellant submits that oral argument would assist the Court because this appeal involves complex and fact-intensive issues of ineffective assistance of counsel, as well as issues of law that are not finally settled in this Circuit.

# **TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement . . . . . . . . . .  i

Statement Regarding Oral Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Citations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of Subject Matter and Appellate Jurisdiction . . . . . . . . . . . . . . . . . . . . xii

Statement of the Issues  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii

Statement of the Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    Course of Proceedings and Dispositions  . . . . . . . . . . . . . . . . . . . . . . . 1

      B.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           1.    Daubert Hearing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

           2.    The Trials  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           3.    Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           4.    Direct Appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

           5.    2255 Motion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      C.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Summary of the Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

POINT I

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE
OF TRIAL COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      A.    Failure to Prepare Dr. Berlin for the
            Daubert Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

      B.    Failure to Call Dr. Berlin at Sentencing . . . . . . . . . . . . . . . . . 39

      C.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

POINT II

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE
OF APPELLATE COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

# TABLE OF CITATIONS

**Cases:**

Anders v. California,
    386 U.S. 738 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Aron v. United States,
    291 F.3d 708 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26,44

Bloom v. Calderon,
    132 F.3d 126 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Cornell v. Kirkpatrick,
    665 F.3d 369 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Credell v. Bodison,
    818 F. Supp. 2d 928 (D.S.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Daubert v. Merrell Dow Pharmaceuticals,
    509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Davis v. United States,
    417 U.S. 333 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Eze v. Senkowski,
    321 F.3d 110 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 343

Friedlander v. United States,
    131 S. Ct. 1833 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,16

Frye v. United States,
    293 F. 1013 (D.C. Cir. 1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Gall v. United States,
    552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Glover v. United States,
    531 U.S. 198 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Gray v. Greer,
    800 F.2d 644 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Hammonds v. Allen,
    849 F. Supp. 2d 1262 (M.D. Ala. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Henry v. Poole,
    409 F.3d 48 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Jones v. Barnes,
    463 U.S. 745 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Kyles v. Whitley,
    514 U.S. 419 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27,38

Libberton v. Ryan,
    583 F.3d 1147 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Lockhart v. Fretwell,
    506 U.S. 364 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Machibroda v. United States,
    368 U.S. 487 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Montgomery v. United States,
    469 F.2d 148 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Ouber v. Guarino,
    293 F.3d 19 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Payne v. United States,
    566 F.3d 1276 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Rhode v. United States,
        583 F.3d 1289 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Riggs v. Fairman,
        399 F.3d 1179 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27,38

Rompilla v. Beard,
        545 U.S. 374 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Rosario v. Ercole,
        617 F.3d 683 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Sanders v. Ratelle,
        21 F.3d 1446 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Smith v. Robbins,
        528 U.S. 259 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27,45

Spencer v. United States,
        ___ F.3d ___, 2013 WL 4106367 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . 25

Strickland v. Washington,
        466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Sturgeon v. Quarterman,
        615 F. Supp. 2d 546 (S.D. Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Taylor v. United States,
        487 F.2d 307 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

United States v. Ahders,
        622 F.3d 115 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

United States v. Berryman,
        322 Fed. Appx. 216 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. Bowie,
        198 F.3d 905 (D.C. Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. Buchanan,
        299 Fed. Appx. 903 (11th Cir. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . 51,52

United States v. Ciszkowski,
        493 F.3d 1264 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54n

United States v. Dodds,
        347 F.3d 893 (11th Cir. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

United States v. Erickson,
        2012 WL 4194504 (D. Nev. 2012)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

United States v. Friedlander,
        395 Fed. Appx. 577 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 1,2,3,15,16

United States v. Gladish,
        536 F.3d 646 (7th Cir. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36,49,50

United States v. Grauer,
        805 F. Supp. 2d 698 (S.D. Iowa 2011)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United States v. Hofus,
        598 F.3d 1171 (9th Cir. 2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36,37n

United States v. Irey,
        612 F.3d 1160 (11th Cir. 2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47,48

United States v. Joseph,
        542 F.3d 13 (2d Cir. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

United States v. Maxwell,
        34 F.3d 1006 (11th Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

United States v. Murrell,
    358 F.3d 1283 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,47

United States v. Nelson,
    921 F. Supp. 105 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. Nitschke,
    843 F. Supp. 2d 4 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

United States v. Phillips,
    210 F.3d 345 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40n

United States v. Sanchez,
    138 F.3d 1410 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53n

United States v. Sarras,
    575 F.3d 1191 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

United States v. Shelley,
    405 F.3d 1195 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

United States v. Vargas,
    709 F. Supp. 2d 48 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. Wernick,
    691 F.3d 108 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,52,52n,53

United States v. Winckelmann,
    70 M.J. 403 (C.A.A.F. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

United States ex. rel. Hampton v. Leibach,
    347 F.3d 219 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

United States Sugar Corp. v. Henson,
    823 So.2d 104 (Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Wellington v. Moore,
    314 F.3d 1256 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Wiggins v. Smith,
    539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39,40

Williams v. Taylor,
    529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40,43

## Statutes and Rules:

18 U.S.C. § 2422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,28

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,41

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S.S.G. § 1B1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii,12,24,50,51,52

U.S.S.G. § 2G2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,17

U.S.S.G. § 3D1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,51

Fed. R. App. Pro. 26.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Fed. R. Evid. 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

11th Cir. Rule 26.1-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**Other Authorities:**

3 Charles Alan Wright, <u>Federal Practice and Procedure,</u>

    § 599 (2d ed.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

## STATEMENT OF SUBJECT MATTER
## <u>AND APPELLATE JURISDICTION</u>

This appeal arises from a motion by a Federal prisoner to vacate his conviction and sentence, over which the Federal courts have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2255.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, in that this is an appeal from a district court order that finally disposed of the underlying proceeding.

## STATEMENT OF THE ISSUES

1.    Did defendant receive ineffective assistance of trial counsel due to his attorney's failure to properly prepare his psychiatric expert, Dr. Frederick Berlin, to testify at a <u>Daubert</u> hearing?

2.    Did defendant receive ineffective assistance of counsel at sentencing due to his attorney's failure to call and/or submit a report from Dr. Berlin concerning mitigating factors including but not limited to lack of future dangerousness, amenability to treatment and/or ability to live at liberty under supervision?

3.    Did defendant receive ineffective assistance of appellate counsel due to his attorney's failure to challenge the use of uncharged conduct as 'relevant conduct' for purposes of U.S.S.G. § 1B1.3?

## STATEMENT OF THE CASE

This appeal arises from an order of the United States District Court for the Middle District of Florida (Hon. James D. Whittemore, J.) denying defendant Charles Friedlander's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. In the underlying criminal action, Dr. Friedlander was convicted of one count of attempted child enticement pursuant to 18 U.S.C. § 2422(b), which conviction this Court affirmed on direct appeal on September 3, 2010. See United States v. Friedlander, 395 Fed. Appx. 577 (11th Cir. 2010). In the Section 2255 motion, defendant alleged, *inter alia*, (a) that his trial counsel was ineffective in failing to prepare expert psychiatrist Dr. Frederick S. Berlin to testify at a Daubert hearing and in failing to call Dr. Berlin as a witness at sentencing; and (b) that his appellate counsel was ineffective in failing to argue that the use of certain uncharged conduct as relevant conduct was error.

## A.    Course of Proceedings and Dispositions in the Court Below.

On July 24, 2008, a criminal complaint was filed against defendant-movant Friedlander in the United States District Court for the Middle District of Florida charging him with one count of attempted child enticement. (A3).

On July 30, 2008, a single-count indictment was lodged against Dr. Friedlander in the Middle District of Florida, specifying the same charge and seeking forfeiture

-1-

of assets related to the offense.  (A40-42).

On November 14, 2008, the trial court (Whittemore, J.) held oral argument on pending motions, including the Government's motion to preclude expert witnesses, at which time it scheduled a <u>Daubert</u> hearing for the following Monday.  (A44-214).

On November 17, 2008, a <u>Daubert</u> hearing was held with respect to defendant's proposed psychiatric expert, Dr. Frederick S. Berlin, following which the trial judge granted in part and denied in part the Government's motion to preclude.  In pertinent part, the court precluded any testimony concerning sexual fantasy and/or other sexual behavior on the Internet, as well as testimony concerning whether Dr. Friedlander met the diagnostic criteria for pedophilia and/or sexual sadism.  (A215-374).

A jury trial was held in the court below from December 8 through 17, 2008, resulting in conviction.  (A15-17).  This conviction was vacated upon a motion pursuant to Fed. R. Crim. Pro. 33, and a new trial was scheduled.  (A17).

A second jury trial was held from March 23 through 27, 2009, resulting in conviction.  (A26-27).

On July 21, 2009, the court below sentenced defendant principally to 360 months' imprisonment.  (A332-422).

Defendant timely appealed, and his conviction was affirmed on direct appeal by this Court on September 3, 2010.  <u>United States v. Friedlander</u>, 395 Fed. Appx. 577

(11th Cir. 2010). Defendant petitioned for certiorari to the United States Supreme Court, which was denied on April 4, 2011. <u>Friedlander v. United States</u>, 131 S. Ct. 1833 (2011).

On April 2, 2012, defendant timely moved, pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence on the ground of ineffective trial counsel and ineffective appellate counsel. (A423-39).

On June 8, 2012, the Government filed opposing papers. (A440-633).

On July 9 and August 30, 2012, defendant filed reply and supplemental papers in further support of the motion. (A634-74).

On November 30, 2012, the district court (Whittemore, J.) issued an order denying the motion and declining to issue a certificate of appealability. (A675-719). Judgment was entered pursuant to the district court's order on December 3, 2012. (A720-21).

Defendant timely appealed the district court's order (A722-23) and sought a certificate of appealability from this Court. On August 7, 2013, this Court (Hon. Adalberto Jordan, J.) granted a certificate as to the three issues raised in this appeal.

**B.    Statement of Facts.**

      *1.    <u>Daubert</u> Hearing.*

Defendant retained the Law Offices of Tragos & Sartes, of which George

-3-

Tragos, Esq., and Paul Sartes, Esq., were principals, to represent him on the underlying charges. From the beginning, it was obvious that the main issue in the case would be Dr. Friedlander's mental state – i.e., whether he in fact intended to abuse the fictitious children referred to in his Internet chats, or whether he was instead focused on establishing a romantic relationship with the detective who claimed to be the fictitious minors' father – and that expert psychiatric testimony would be key to elucidating this issue. Moreover, a pretrial discovery order required that all parties disclose their experts by August 18, 2008. (A43.1). Nevertheless, Mr. Tragos did not consult expert psychiatrist Dr. Frederick S. Berlin until October 6 (A607) and did not provide expert disclosure until November 5, less than two weeks before the trial date that was then scheduled (A43.1).

The Government moved to preclude Dr. Berlin's testimony or for a <u>Daubert</u> hearing. (A43.1-43.7). The motion was argued on Friday, November 14, 2008. The evening prior, Mr. Tragos had proffered an eight-page report by Dr. Berlin which opined, based on examination of Dr. Friedlander and case records, that defendant was not a pedophile and that his chats represented Internet fantasy rather than a genuine desire to sexually abuse a child. (A623-30).

When questioned by the court, Mr. Tragos claimed that he disclosed Dr. Berlin late because of the volume of discovery that had been exchanged in the case and

-4-

because the psychiatrist needed to review those materials. (A48-50, 52, 176-80). The court did not accept this excuse. (A183-84). In further colloquy, the court raised the issue of whether Dr. Berlin's opinions were supported by peer-reviewed studies and scientific methodology (A113) and whether Dr. Berlin had looked at statistical studies (A158). The court noted that methodology had advanced since 1995 (the date of another case that had been discussed during the colloquy) and that it "expect[ed] we're in a whole different world now" regarding scientific analysis of sexual behavior. (A158).

The court determined to hold a Daubert hearing (A174) and, angered at the delay, scheduled the hearing for 1:15 on Monday, November 17 – i.e., the next business day. (A190-91). Upon Mr. Tragos' complaints as to short notice (A212), the court noted that in light of the impending trial and the Government's motion for a Daubert hearing, counsel should have had Dr. Berlin on standby (A212-13).

Later that day, Mr. Tragos called Dr. Berlin and told him that he had to be in Tampa on Monday. (A663). This was the first that Dr. Berlin had heard that a Daubert hearing might be in the offing. (A663). He was on call at Johns Hopkins Hospital both Saturday and Sunday, so was only able to fly into Tampa late on Sunday. (A663). That evening was the only chance he had to prepare with counsel for the hearing. (A663).

Notably, Dr. Berlin comes from Maryland, which is a <u>Frye</u> and not a <u>Daubert</u> jurisdiction. He had testified at <u>Frye</u> hearings in Florida, but those hearings revolved around the question of whether certain methodology was generally accepted within the scientific community and not on the more general question of reliability. (A663). He had never testified at a <u>Daubert</u> hearing before and did not know what the <u>Daubert</u> standard was. (A663-64).

Dr. Berlin is not an attorney and relies on lawyers to instruct him in the applicable legal standards. (A664). However, at no time prior to or during the Sunday-evening preparation session did Mr. Tragos or Ms. Sartes instruct Dr. Berlin on the <u>Daubert</u> standard, nor did they advise him that he would have to support his opinions with scientific literature as opposed to his training and experience. (A663-64). Indeed, he was not even told to bring the Diagnostic and Statistical Manual, Fourth Edition ("DSM-IV") which is the "bible" of clinical psychiatry in the United States. (A665).

The <u>Daubert</u> hearing occurred on November 17, 2008. (A215-324). Dr. Berlin testified to his background, various cases in which he had participated, the material he had reviewed, his video examination of the defendant and his findings regarding Internet fantasy as well as whether defendant was a pedophile or sexual sadist. He additionally discussed the standards and methods he used in his evaluation. Early in

-6-

the cross-examination, however, the issue came up as to whether there was scientific literature to support his findings. He stated that he wasn't asked to bring anything and had little time to prepare, and "came out of respect for the court." (A245). While Dr. Berlin testified that scientific literature did exist to support his opinions (A229-30, 271-72, 281-83), he did not have any at hand and was unable to expound upon it in detail.

Had Dr. Berlin been informed of the <u>Daubert</u> burden, he could have brought with him and discussed numerous published articles and in-process studies that utilized scientific methodology and provided statistical support for his opinions. (A665-66).

At the close of the hearing, and after argument, the district court acknowledged that Dr. Berlin was qualified and had "extraordinary professional experience." (A290). The court permitted Dr. Berlin to testify about the characteristics of pedophilia and sexual sadism; however, it precluded Dr. Berlin from testifying as to whether Dr. Friedlander was a pedophile or sexual sadist, and also precluded any testimony regarding Internet fantasy due to its perception that there was "nothing science based" about the psychiatrist's findings and that there was a lack of scientific methodology and reliability supporting those opinions. (A297-98, 308-13).

2.    *The Trials.*

Dr. Friedlander's case came to trial on December 8, 2008, and ended on December 17 with a verdict of conviction. Dr. Friedlander was 78 years old at the time of trial.

Defendant took the stand at this trial, and Dr. Berlin testified within the limits set at the Daubert hearing. During cross-examination, the prosecutor questioned him extensively concerning whether he used an obsolete edition of the Diagnostic and Statistical Manual, Fourth Edition ("DSM-IV"). (A507-08). After trial, it was learned that the prosecutor was incorrect in this cross-examination and that Dr. Berlin had in fact been using the latest edition of the DSM-IV. The district court, on motion, vacated defendant's conviction, but declined to hold that a second trial was barred by double jeopardy. (A17).

The second trial commenced on March 23, 2009 and ended with a verdict of conviction on March 27.[1] At trial, evidence was presented that Dr. Friedlander, under the screen name "Captoes," engaged in discussions with an individual using the screen

---

[1] Because none of defendant's claims on this appeal directly relate to the evidence at trial or any rulings made thereat, the trial evidence is discussed only insofar as necessary to address the issue of prejudice. Defendant respectfully refers the Court to the statement of facts contained in his brief on direct appeal (A474-77) and in the brief of the Government (A532-46) for a more complete discussion of the underlying conduct.

-8-

name "DunedinSuperDad" concerning corporal punishment and domination of the latter's son. (A474). DunedinSuperDad was in fact Detective Curt Romanosky of the Pinellas County Sheriff's Department, and there was no actual son. (A474). Over a period of weeks, Detective Romanosky identified inconsistencies in Dr. Friedlander's story leading him to believe that Dr. Friedlander was not in fact abusing children, and discontinued the interaction. (A474).

In June 2008, Detective Romanosky, this time using the screen name "Strictdad7," was again contacted by defendant under the screen name "Captoes." (A475). Numerous Internet chats ensued in which Detective Romanosky portrayed himself as a member of a fictitious group of parents that engaged in physical and sexual abuse of children, and engaged defendant in chats and telephone conversations regarding a possible meeting at which Dr. Friedlander would beat and sexually abuse Strictdad7's fictitious minor sons. (A475-76).

Notably, during these chats, Dr. Friedlander stated that he had sexually abused his own son (he in fact had no children) and that he had abused other children in a "torture room" in his basement (he in fact had no basement). (A475, 477).

Ultimately, it was agreed that a meeting would take place in Pinellas County, Florida, so that defendant could show whips and other instruments of abuse to the fictitious group of parents and demonstrate their use by beating and sexually abusing

-9-

Romanosky's fictitious sons. (A475-76). On July 24, 2008, defendant drove from Fort Myers to Pinellas County and met Detective Romanosky at a Cracker Barrel off Interstate 275. (A476). Detective Romanosky ascertained that defendant had brought implements including whips and rubber gloves to the meeting. (A476). At that time defendant was arrested, custodially interviewed, and charged with the instant offenses. (A476-77).

It was ascertained through investigation that Dr. Friedlander did not possess the "torture room" that he had discussed online, that there was no child pornography or other contraband on his computer, and that there was no evidence of children or children's belongings in his house. (A477). Detective Romanosky himself testified that he doubted that Dr. Friedlander's stories were true. (A496).

Dr. Berlin was not called as a witness at the second trial, nor did defendant testify at that trial.

### 3. *Sentencing*.

Following Dr. Friedlander's second conviction, the Probation Department prepared a presentence report ("PSR") which calculated his Sentencing Guideline offense level at 41. This Guideline calculation was based on, *inter alia*, a determination that defendant had committed sexual misconduct with respect to three different fictitious minors. These were the two fictitious children referred to in the

-10-

2008 Romanosky chats, and a fictitious mentally handicapped minor "daughter" referenced in chats that defendant engaged in with a Detective Spector in Port St. Lucie. The Port St. Lucie chats occurred during a time frame that overlapped the 2008 Romanosky chats, and also concerned sexual subject matter, but were not otherwise connected to the Romanosky chats. The PSR recommended that, pursuant to Application Note 5 of U.S.S.G. § 2G2.1, the conduct as to each fictitious minor be treated as a separate count of conviction for purposes of the Chapter 3, Part D grouping rules.

Defendant filed a sentencing memorandum which, *inter alia*, challenged the use of the Port St. Lucie chats as a separate count of conviction. (A325-31).[2] His argument was twofold: that the interaction between the defendant and Detective Spector did not constitute a "substantial step" toward commission of a sexual offense, and that the Port St. Lucie conduct was in any event not relevant because it was not

---

[2] Defendant also contended, in the same papers, that the Romanosky chats should be treated as a single count rather than two, because all of defendant's conduct was directed at and through a single individual (Romanosky), and because Romanosky's representation that he was the father of two minors rather than one constituted sentencing factor manipulation. (A327-31). These arguments are not within the scope of the certificate of appealability and will thus not be discussed at length here. However, as discussed in footnote 11 below, defendant respectfully requests that this Court consider expanding the certificate to encompass these arguments, and refers the Court to the relevant arguments made in the sentencing memorandum and at the time of sentencing.

part of the harm caused by the instant offense.

Further argument on this topic was taken at the sentencing proceeding on July 21, 2009. (A332-422). At that time, defense counsel argued that Dr. Friedlander did not engage in any overt acts beyond mere preparation during his interaction with Detective Spector, that "all we have is conversation," and that he made repeated excuses whenever the detective suggested a meeting. (A367-68, 377-79). The court also acknowledged defendant's argument that "it was not part of the relevant conduct." (A368).

In response, the Government contended that the Port St. Lucie conduct rose to the level of an attempt because Dr. Friedlander discussed sexual topics during the chats and sent a photograph in response to Detective Spector's request. (A371-72). The Government further contended that the Port St. Lucie chats were relevant conduct because they occurred during the same time frame as the Romanosky chats, and that they were thus part of "all acts and omissions committed... by the defendant" and part of the harm that was the object of such acts and omissions. (A372-74).

The district court questioned whether "if a defendant robs two banks and the government finds out he robbed a third in between the other two, that can be considered as relevant conduct?" (A375). The court further questioned the Government's reliance on U.S.S.G. § 1B1.3(a)(2) to include the Port St. Lucie chats

-12-

within the relevant conduct, because "that provision references solely with respect to offenses of a character for which 3D1.2(d) would require grouping. We don't have that situation here; do we?" (A375-76). The Government agreed that Section 1B1.3(a)(2) did not apply, that it was "relying on a more generalized description of harm or conduct by this defendant," and that it was not aware of any authorities on point. (A376-77).

Ultimately, while acknowledging its "concerns" about including the Port St. Lucie chats as relevant conduct, the court found that even though they were arguably not related to the offense of conviction, they occurred during an overlapping time frame and were thus acts "that occurred during the commission of the offense." (A380-82). As such, the court found it to be "relevant conduct, properly considered and properly grouped," and adopted the recommended Guideline level of 41. (A382, 385).

Matters then proceeded to presentation of Section 3553(a) arguments by the Government and the defendant. Mr. Tragos did not call Dr. Berlin as a witness at sentencing to present mitigating arguments concerning Dr. Friedlander's lack of future dangerousness, the methods by which any risk he posed could be managed, his amenability to treatment, and/or measures that could be taken to allow him to live at liberty during release. Nor did he arrange for Dr. Berlin to provide a supplemental

report to the district court addressing sentence-specific factors.

Instead, although the district court had cautioned Mr. Tragos against offering cumulative testimony (A334), Mr. Tragos called three character witnesses to add to the more than 40 people who had already written letters in praise of the defendant's character. (A388-97). In fact, all three witnesses had themselves written letters to the court. (A392, 394, 397).

Mr. Tragos then delivered a closing argument stressing the absence of any evidence of inappropriate conduct toward actual children and the good life he had otherwise led. (A400-02, 407). The Government stressed what it characterized as the "most despicable" facts of the case, particularly the fact that whipping and beating were discussed, and the chats that Dr. Friedlander had previously engaged in with law enforcement officials. (A403-06).

The court then noted, *inter alia*, that it did not consider the defendant's conduct to be mere fantasy and that the facts were egregious. (A409-13). It also gave weight to its determination that Dr. Friedlander "pose[d] a risk... a threat to other children, real children." (A414). The court then imposed a sentence of 360 months to be followed by lifetime supervised release. (A416).

####    4.    *Direct Appeal.*

Still represented by Mr. Tragos and Mr. Sartes, defendant timely appealed his

-14-

conviction and sentence to this Court, and filed a brief in support of his appeal.(A461-515).  The brief was 11,679 words long (A515) and raised six (6) arguments:

> \*      That it was error to permit Detective Romanosky to "testify to the ultimate issue of whether Dr. Friedlander's conduct was a violation of Florida Law;"

> \*      That it was error to preclude Dr. Berlin from testifying concerning defendant's clinical diagnosis and the characteristics of Internet fantasy;

> \*      That the district court's Rule 404(b) rulings were in error;

> \*      That the statute was unconstitutional as applied because no actual minor was involved;

> \*      That the second trial was barred by double jeopardy; and

> \*      That the sentence was substantively unreasonable.

(A463-64).  It did not raise any arguments related to the use of the Port St. Lucie chats as relevant conduct.

By decision dated September 3, 2010, this Court affirmed the conviction and sentence, rejecting defendant's appellate arguments.  United States v. Friedlander, 395 Fed. Appx. 577 (11th Cir. 2010).  As a threshold matter, it found that there was no double jeopardy bar to a second trial because there was no evidence that the prosecutor deliberately misread the publication date of the DSM-IV manual in order

-15-

to goad defendant into moving for a mistrial. <u>See</u> <u>id.</u> at 580. This Court further found that the admission of the Rule 404(b) evidence was not an abuse of discretion and that any error in admitting Romanosky's legal testimony was harmless in light of the trial court's instructions. <u>Id.</u> at 580-81.

The Court found that, *on the record before it* – which included the testimony given by Dr. Berlin at the <u>Daubert</u> hearing after Mr. Tragos failed to properly prepare him – it was not error to exclude expert proof on Internet fantasy, and that defendant's claims with regard to expert testimony were otherwise unpreserved. <u>Id.</u> at 581-82. It found the sentence substantively reasonable in light of the "sadomasochistic sexual acts" referenced in the Romanosky chats. <u>Id.</u> at 582. Finally, in a footnote, it rejected defendant's vagueness claim on the ground that such argument was "squarely... foreclosed by [its] precedent" in <u>United States v. Murrell</u>, 358 F.3d 1283 (11th Cir. 2004). <u>See</u> <u>id.</u> at 582 n.4.

Defendant petitioned for certiorari to the United States Supreme Court, which was denied on April 4, 2011. <u>Friedlander v. United States</u>, 131 S. Ct. 1833 (2011).

     5.   *Section 2255 Motion.*

On April 2, 2012, defendant timely moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (A423-39). The motion was filed in "standard form" format in order to comply with the AEDPA statute of limitations while new counsel,

who had recently been retained, awaited *pro hac vice* admission in the Middle District of Florida.

The motion alleged two grounds for relief: ineffective assistance of trial counsel and ineffective assistance of appellate counsel. (A425-35). As pertinent to this appeal, defendant contended that his trial counsel was ineffective in failing to prepare Dr. Berlin for the Daubert hearing, resulting in the psychiatrist not having available numerous peer-reviewed articles that would demonstrate that his opinions concerning Internet fantasy had a scientific basis. (A425-28). Defendant alleged that, had Dr. Berlin shown scientific support for his theories, his proposed testimony would have been admissible and a reasonable probability existed that the verdict would have been different. (A428-29).

Defendant also alleged that counsel was ineffective for failing to call Dr. Berlin or submit a report from him in aid of sentencing, in that, *inter alia*, the psychiatrist could have submitted mitigating information concerning Dr. Friedlander's lack of future dangerousness. (A430).

Finally, defendant contended that his appellate counsel was ineffective for, *inter alia*, failing to raise the fully preserved issue of whether the Port St. Lucie chats were in fact "relevant conduct" that could properly be treated as a separate count of conviction pursuant to the U.S.S.G. § 2G2.1 application note. Defendant argued that,

-17-

had such issue been raised, it would have resulted in a remand for resentencing and the possible imposition of a survivable sentence.  (A433-35).

The Government filed a memorandum of law in opposition to the motion.  With respect to the Daubert hearing, it contended that Mr. Tragos and Mr. Sartes properly prepared Dr. Berlin for the hearing, that such an eminent scientist as Dr. Berlin would hardly require preparation, that the Internet fantasy testimony would not have cleared the Daubert threshold even had Dr. Berlin had the supporting scientific literature at hand, and that in any event it was not a proper subject of expert proof.  The Government also argued that there was no ineffective assistance in failing to call Dr. Berlin at sentencing because the district court had already heard and rejected his opinion, that the failure to raise the Port St. Lucie issue on appeal was a valid strategic choice, and that in any event such issue was without merit.  (A440-60).

Annexed to the Government's response were, *inter alia*, affidavits from Mr. Tragos and Mr. Sartes. (A607-11, 631-33).  Mr. Tragos acknowledged that Dr. Berlin was retained only on October 6, 2008.  (A607).  He stated that Dr. Berlin's fee for review of case materials and examination of Dr. Friedlander exceeded $60,000, that "Dr. Berlin knows far more about [the psychology of sexual behavior] than any lawyer could hope to know," and that based on Dr. Berlin's billing, "[his] preparation of Dr. Berlin included meeting up until 11:30 p.m. the night before the Daubert

hearing." (A608).  He stated that his "decision not to present Dr. Berlin at the sentencing was... based on the fact that the Court had already heard [his] testimony" and that the district court acknowledged such testimony at sentencing. (A610).  As to the appeal, he stated that he "selected those matters that [he] believed had the greatest chance of success" and that he was mindful of appellate page limits. (A611).

Mr. Sartes attested that when Dr. Berlin flew in from Maryland for the <u>Daubert</u> hearing, he "met with Mr. Tragos where they prepared... well into the night." (A631). He echoed Mr. Tragos' statement that the decision not to call Dr. Berlin at sentencing was based on the fact that the court had already heard from him (A632) and that they picked what they believed to be the best appellate issues available (A633).

Defendant filed a reply memorandum responding to the Government's arguments. (A634-61).  *Inter alia*, defendant argued (a) that while Dr. Berlin was an eminent *psychiatrist*, he had no expertise in *law* and did not come from a <u>Daubert</u> jurisdiction, thus needing preparation on the <u>Daubert</u> standard; (b) that Dr. Berlin could easily have brought and expounded upon scientific literature if asked to do so; and (c) that attorneys Tragos and Sartes, while claiming to have prepared Dr. Berlin, had said nothing about the *content* of such preparation. (A639-42).  Defendant reiterated that such preparation would have enabled Dr. Berlin to provide a sound scientific basis for his opinion, thus clearing the <u>Daubert</u> threshold, and that such

-19-

testimony would have been relevant, admissible and highly probative.  (A642-46).

In support of this contention, defendant offered the affidavit of Dr. Berlin.  (A662-68).[3]  The psychiatrist attested that, while the statements of Mr. Tragos and Mr. Sartes were true, they omitted several critical facts.  (A663).  These were as follows:

> 5.     To the best of my recollection, at some point on Friday, November 14, 2008, Mr. Tragos had told me that the Court had scheduled a Daubert hearing concerning my testimony.  At no time before this do I recall either Mr. Tragos or Mr. Sartes telling me that a Daubert hearing might be required or that the prosecutor had sought one.

> 6.     I recall being on call at the hospital both Saturday and Sunday, November 15 and 16.  I flew into Tampa late on Sunday and was unable to start preparing until well into the evening.  Thus, when Mr. Tragos and Mr. Sartes state that they spent until 11:30 p.m. that night preparing me for the Daubert hearing, they fail to inform the court that it was already evening when we started preparing, and that the entire session amounted at most to a few hours.

> 7.     I made reference to the lack of time to prepare, and the fact that I had been on call at the hospital all weekend, at page 31 of the Daubert hearing transcript.

> 8.     As far as I can recall, the Daubert hearing in this case was the first such hearing I had ever attended.  I have testified at Frye hearings in Florida, but in those hearings, my testimony had revolved around the question of whether certain methods were generally accepted within

---

[3] Defendant himself also submitted an affidavit in support of Section 2255 relief; however, this affidavit related to issues not at bar on this appeal.  (A669-71).

the psychiatric and mental health communities.

9.     To the best of my recollection, at no point did either Mr. Tragos or Mr. Sartes instruct me in a timely fashion about the <u>Daubert</u> burden of proof, nor did they advise me in a timely fashion that I might have to support my opinions in this case with peer-reviewed literature. By the time we met to discuss the <u>Daubert</u> hearing, I had already traveled from Maryland to Florida. Indeed, as I stated on page 31 of the hearing transcript, I had not been asked to bring anything specific with me to the hearing.

10.     As a physician, I consider it my role when working with attorneys to educate them regarding any relevant psychiatric issues and to suggest questions that they may wish to ask me on direct examination. Customarily, I rely on the lawyers to instruct me regarding the legal standards and burdens of proof that may relate to my testimony. Just as I expect the lawyers to rely on me for my psychiatric and medical expertise, I expect to rely on them for legal expertise. That expertise would be expected to cover what topics I might have to discuss or what materials I might have to bring with me in order to meet the expectations set by the courts with respect to a specific type of hearing.

(A663-64).

Dr. Berlin also attested that he was not advised to bring any scientific literature or even a copy of the DSM-IV, which would have elucidated his opinions concerning pedophilia and sexual sadism. (A664-65). Had he been informed that citation to scientific literature was necessary, he could have cited at least four peer-reviewed articles discussing the nature, prevalence and case studies of Internet sexual fantasy.

-21-

(A665).  He also could have discussed at least three ongoing studies concerning Internet sexual behavior and the absence of any correlation between such behavior and contact offenses.  (A666).

Defendant further contended that the reasoning given by Mr. Tragos and Mr. Sartes for not calling Dr. Berlin at sentencing was invalid because the opinions offered by the psychiatrist at sentencing would have been different from those rendered at the Daubert hearing.  (A648-50).  Again, this argument was supported by Dr. Berlin's affidavit:

> 18.    Moving on to sentencing, Mr. Tragos and Mr. Sartes attest that they did not call me as a witness at sentencing because the Court had already heard from me. However, my pretrial report, and my Daubert hearing testimony, were focused on issues relating to criminal liability.
>
> 19.    There are many more issues that are relevant exclusively to sentencing and which were not fully touched upon in my prior reports and/or testimony, including risk to the community, future dangerousness, likelihood of re-offense, and types of supervision and/or therapy that could be offered to alleviate potential concerns.
>
> 20.    For instance, I could have emphasized to the court that Dr. Friedlander's entire history of behavioral concerns had been associated with the use of computers. Beyond that, his psychological history and profile did not demonstrate that he had ever sought out opportunities to engage in offending behavior unless the possibility of doing so had been presented to him by others on the Internet. As

-22-

> a consequence, in my professional opinion, a strictly supervised lifetime ban from computer/Internet use combined with supportive therapy could have permitted him to live at liberty with minimal risk to others. I could also have explained, based upon my professional experience, how such therapy and monitoring would have interacted with his age upon release (late 80s if sentenced to the 10-year minimum), and could have addressed how the likelihood that his mobility at release would be limited, along with other factors, might have affected any potential future risk.

(A666-67).

Finally, the reply papers argued that the points raised on the direct appeal were weak, that the Port St. Lucie issue was clearly stronger, and that it would have resulted in a remand for a lower sentence. (A655-58, 659-60).

Additionally, on August 30, 2012, defendant filed a supplemental memorandum directing the district court's attention to the Second Circuit's decision in United States v. Wernick, 691 F.3d 108 (2d Cir. 2012), which bore directly on the Port St. Lucie issue. (A672-74).

On November 30, 2012, the district court issued an order denying the motion without a hearing. (A675-719). As to the Daubert hearing, the court cited various colloquies from the hearing transcript and concluded that its preclusion of Internet fantasy testimony was based on the lack of a "methodology" or testing rather than the simple absence of peer-reviewed literature. (A683-93). The court accused defendant

-23-

of "seemingly" attempting to "re-litigate" the admissibility of Dr. Berlin's testimony. (A693).  In a footnote, the court also expressed skepticism as to whether Dr. Berlin could truly not have been conversant with the <u>Daubert</u> standard.   (A682-83). Accordingly, the court found that any failure to prepare Dr. Berlin for the hearing did not constitute ineffective assistance.  (A694).

As to sentencing, the court found that the failure to call or submit a report from Dr. Berlin was not ineffective because it had already considered and rejected his testimony.   (A698-702).   Notably, the court came to this conclusion despite acknowledging plaintiff's claim (and Dr. Berlin's attestation) that the proposed sentencing testimony would have been different from his <u>Daubert</u> testimony. (A699).

Finally, the district court held that appellate counsel were not ineffective because they filed a six-point brief and because the proposed issues, including the Port St. Lucie issue, would have lacked merit.  (A707-08).  The court stated that the Port St. Lucie chats were relevant conduct because they "occurred contemporaneously" with the offense conduct and were "similar in substance."  (A714-15).  Notably, however, the case law that the court relied upon for this holding (A714) was decided under U.S.S.G. § 1B1.3(a)(2) – a guideline that the court itself had viewed as inapplicable during the sentencing colloquy and on which the Government had disclaimed reliance (A375-77).  The court thus concluded that counsel engaged in a

proper "winnowing" process with respect to the issues on appeal.  (A717-18).[4]

Judgment was entered pursuant to the district court's order on December 3, 2012 (A720-21) and defendant timely filed a notice of appeal (A722-23).  On August 7, 2013, this Court granted a certificate of appealability as to the three issues raised herein.  (A724-25).

## C.    Standard of Review.

On appeal from an order denying a Section 2255 motion, this Court reviews findings of fact for clear error and questions of law *de novo*.  Rhode v. United States, 583 F.3d 1289, 1290 (11th Cir. 2009).  The scope of review is limited to the issues specified in the certificate of appealability.  Id. at 1290-91.

A defendant may obtain relief under Section 2255 if he demonstrates that he is confined in violation of the Constitution or laws of the United States.  See 28 U.S.C. § 2255(a).  The scope of review is not limited to constitutional claims, but extends to errors of law.  See Davis v. United States, 417 U.S. 333, 342 (1974); Spencer v. United States, ___ F.3d ___, 2013 WL 4106367, *4 (11th Cir. 2013).

The district court is required to hold an evidentiary hearing on a Section 2255 motion held "[u]nless the motion and the files and records of the case *conclusively*

---

[4] The decision neither granted nor denied a certificate of appealability; however, defendant separately moved for and was denied a certificate in the district court before seeking and obtaining one from this Court.

show that the prisoner is entitled to no relief." <u>See</u> 28 U.S.C. § 2255(b) (emphasis added).  If the defendant's "specific and detailed factual assertions" make out a prima facie case for relief, and where any entitlement to relief turns on factual issues outside the "record and file" of the action, a hearing is required even if such allegations are "improbable," as long as they cannot "be said to be incredible." <u>Machibroda v. United States</u>, 368 U.S. 487, 496 (1962).

In order to obtain a hearing, defendant "need only *allege* - not prove… non-conclusory facts that, if true, would entitle him to relief," and a hearing must be held as long as the claims are neither contradicted by the record nor "patently frivolous." <u>See</u> <u>Aron v. United States</u>, 291 F.3d 708, 714 n.6 (11th Cir. 2002).  The courts may not summarily resolve factual disputes via affidavits, but must instead hold an evidentiary hearing at which the credibility of the affiants may be tested through cross-examination. <u>See</u> <u>Montgomery v. United States</u>, 469 F.2d 148, 150 (5th Cir. 1972) ("contested fact issues in § 2255 cases must be decided on the basis of an evidentiary hearing, not affidavits").

As to the underlying claim of ineffective assistance of counsel, relief is required if the defendant shows "(1) "that counsel's representation fell below an objective standard of reasonableness" and, (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Both prongs apply to claims of ineffective assistance of appellate counsel as well as claims involving trial counsel. Smith v. Robbins, 528 U.S. 259, 287 (2000).

The first prong measures counsel's performance against professional norms existing at the time of the representation. See Strickland, 466 U.S. at 688-89. Although counsel's performance is viewed deferentially, see id., at 689-90, this deference does not extend to errors of omission for which counsel cannot provide any reasonable strategic or tactical justification. See, e.g., Libberton v. Ryan, 583 F.3d 1147, 1169 (9th Cir. 2009) (finding that failure to pursue mitigating evidence could not be justified by any valid strategy). The second prong is a "fairly low threshold," see Riggs v. Fairman, 399 F.3d 1179, 1183 (9th Cir. 2005) under which prejudice need not be demonstrated by a preponderance of the evidence so long as counsel's errors are sufficient to undermine confidence in the outcome, see Kyles v. Whitley, 514 U.S. 419, 434 (1995).

The ineffective assistance standard does not contemplate "averaging out" counsel's performance, and a prejudicial error cannot be excused simply because the defense counsel's performance was adequate or even superior in other respects. See generally Rosario v. Ercole, 617 F.3d 683 (2d Cir. 2010); accord Henry v. Poole, 409 F.3d 48, 70-71 (2d Cir. 2005).

-27-

## SUMMARY OF ARGUMENT

Defendant's counsel was ineffective in failing to prepare Dr. Friedlander adequately for the Daubert hearing, including but not limited to failing to instruct him on the medico-legal requirements of Daubert and the need to present scientific support for his opinions. As Dr. Berlin attests, he would have been able to cite and discuss numerous articles and in-process studies that would have shown that his opinions on Internet fantasy were grounded in science and were not simply his conjecture or *ipse dixit*. Such opinion would have been relevant and proper – indeed, other circuits have held that it is reversible error not to allow such testimony in Section 2422 cases where fantasy or role-playing defenses are raised – and would have borne upon the central issue in the case, thus creating a reasonable probability of a different result.

Counsel was also ineffective in failing to call Dr. Berlin or submit a report from him in aid of sentencing. For a defendant of Dr. Berlin's age, assessment of future risk and community management strategies are critical to arguing for a sentence that would allow a possibility of release before the defendant's natural death. The district court gave weight to future risk in determining the sentence, and Dr. Berlin could have supplied critical expert information to aid the court in assessing this factor. Moreover, the "strategic justification" relied upon by counsel – that the court had already heard from Dr. Berlin – is self-evidently meritless because the opinions offered by Dr.

Berlin in aid of sentencing would have been different in focus and substance from those testified to at the <u>Daubert</u> hearing.

Finally, appellate counsel was ineffective in raising issues that were unpreserved, directly contrary to Eleventh Circuit precedent or otherwise had no hope of success as compared to the fully preserved and meritorious Port St. Lucie issue, which would have resulted in a remand for resentencing and offered Dr. Friedlander a second chance at obtaining a survivable sentence.  Notably, the sole basis upon which the motion court determined that this issue would not have had merit hinged on a Sentencing Guideline provision that the district court itself recognized to be inapplicable at the time of sentencing, and on which the Government waived reliance; thus, both the merit of this issue and the ineffectiveness of counsel for not raising it are clear.

## POINT I

### DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant first contends that his trial attorneys, Mr. Tragos and Mr. Sartes, were ineffective in two critical respects.  First, through their own delay and neglect, they maneuvered defendant into a situation where Dr. Berlin had to prepare for a <u>Daubert</u> hearing on one business day's notice, and never instructed Dr. Berlin

-29-

concerning what he had to show under the Daubert standard. This prevented Dr. Berlin from showing that his opinions were indeed grounded in scientific literature and studies concerning Internet fantasy, pedophilia and sexual sadism rather than arising only from his own *ipse dixit*. Second, counsel failed to present evidence at sentencing from Dr. Berlin as to defendant's lack of future dangerousness and community management strategies, which would have mitigated strongly against a finding that a long sentence was necessary to protect the public and achieve specific deterrence. Without these two critical errors of omission, there is a reasonable – indeed a substantial – probability that Dr. Friedlander would not now be serving a sentence that makes it virtually certain that he will die in prison.

### A.    Failure to Prepare Dr. Berlin for the Daubert Hearing.

The undisputed facts of this case show that counsel's pretrial handling of Dr. Berlin was an exercise in neglect. Although it was apparent from the beginning that Dr. Friedlander's mental state would be a key issue, and although counsel was under court order to exchange expert discovery by August 2008, he did not retain an expert until October and did not exchange his report until days before the schedule trial. Had he not done so, then a Daubert hearing, if any, would have been scheduled with ample time to prepare; instead, due to counsel's unjustified delay, the hearing was scheduled on one business day's notice leaving virtually no time for preparation.

The excuse given by Mr. Tragos at the November 14, 2008 colloquy – that discovery was ongoing – was patently insufficient. Clearly, he could have retained Dr. Berlin and disclosed his identity to the Government at an earlier stage of the case while reserving the right to provide supplemental reports as late discovery came in. Or, if the delay in the Government's disclosure made it impossible to provide expert discovery, he could simply have *informed the district court of this fact* at any of the numerous status conferences and requested an extension of the expert disclosure deadline. But he did not; instead, he simply ignored court orders, sought no relief, and made his disclosure on the very eve of trial. The court was justifiably angry at him for doing this at the November 14 colloquy, and it put defendant at a severe disadvantage going into the <u>Daubert</u> hearing.

This neglect continued with Mr. Tragos' failure to ensure that Dr. Berlin knew what a <u>Daubert</u> hearing was, what legal standard his opinions would have to meet, and that he would be required to show that his findings had scientific support outside his own training and experience. Contrary to the district court's footnoted suggestion - and contrary to Mr. Tragos' belief as expressed in his affidavit – this was preparation that Dr. Berlin needed. Although he was an eminent psychiatrist who needed no preparation in terms of *science*, he was not an attorney and relied upon lawyers to guide him in matters of *law*. Moreover, he did not come from a <u>Daubert</u> jurisdiction

-31-

– he practiced in Maryland, which uses Frye, and he had testified in certain Florida state cases which also used the Frye standard – and was thus in desperate need of such guidance in this case.

The Frye standard applies only to "novel" scientific evidence, relates to whether the methods or techniques used by an expert are generally accepted within the relevant scientific community. Unlike a Daubert hearing, the Frye test does not require judicial gatekeeping for the specific opinions and conclusions reached via such methods. See United States Sugar Corp. v. Henson, 823 So.2d 104, 110 (Fla. 2002) ("We wish to highlight the principle that under Frye, the inquiry must focus only on the general acceptance of the scientific principles and methodologies upon which an expert relies in rendering his or her opinion. Certainly, the opinion of the testifying expert need not be generally accepted as well."). Since Dr. Berlin's experience was in Frye jurisdictions, he could not, without guidance from an attorney, prepare to meet the Daubert gatekeeping burden or address the issues of proof that are specific to Daubert hearings.

Had he been given the guidance he needed, he could have brought with him, cited and discussed in detail numerous peer-reviewed articles, book chapters and in-process studies showing that Internet fantasy had indeed been studied and documented, and that his opinions concerning Internet culture and its impact on sexual

-32-

behavior were grounded in statistical study and scientific methodology. He could also have shown that his opinions regarding whether Dr. Friedlander met the diagnostic criteria for pedophilia and/or sexual sadism were supported by the DSM-IV and that specific evidence in the case indicated that Dr. Friedlander fell into neither of these categories.

Notably, Mr. Tragos and Mr. Sartes did not really dispute the lack of relevant preparation in their affidavits, stating in conclusory fashion that they prepared Dr. Berlin for the Daubert hearing but saying nothing about the content of that preparation. They clearly failed to prepare Dr. Berlin to meet the Daubert standard. And again, there is no valid excuse for doing so, given that during the November 14 colloquy, the district court twice raised the question of whether Dr. Berlin's opinions were grounded in scientific methodology and statistics and expressed its eagerness to learn whether the science was in a "whole different world" from 1995. Where the court itself had alerted counsel to what Dr. Berlin would have to show, it was simply inexcusable for them not to alert Dr. Berlin and make sure he knew to bring the literature that explained the relevant statistics and scientific methods. Since any competent counsel would certainly have ensured that an expert understood the applicable legal standard - especially where the expert had never testified at a Daubert hearing before - then they have virtually conceded the ineffectiveness prong of

Strickland.

In sum, counsel's treatment of Dr. Berlin prior to and during the Daubert hearing was a string of acts of neglect and omission, and whether these acts "arose from oversight, carelessness, ineptitude or laziness," they fell well below an objective standard of professional conduct.  See Cornell v. Kirkpatrick, 665 F.3d 369, 377 (2d Cir. 2011), quoting Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003); accord Credell v. Bodison, 818 F. Supp. 2d 928, 934 (D.S.C. 2011).

This case is indeed similar to Sturgeon v. Quarterman, 615 F. Supp. 2d 546, 569 (S.D. Tex. 2009), which found that defense counsel in a robbery prosecution was ineffective in failing to properly prepare an expert for a Daubert hearing by failing to ensure that he "[came] to court with copies of the studies that he relied upon for his opinions."  The court found that, due to counsel's omission in preparing the expert, the defendant was deprived of key evidence on the unreliability of eyewitness identifications which a properly prepared expert could have provided.  See id. at 569-71.  The same errors, and the same degree of prejudice, exists here.  Indeed, if failure to prepare an expert constitutes ineffective assistance even under the strict AEDPA standard applicable to Section 2254 habeas petitions such as Sturgeon, it is all the more so in the Section 2255 context where the Court's review is plenary.  Accord Bloom v. Calderon, 132 F.3d 1267, 1277 (9th Cir.1997) ( "The complete lack of effort

-34-

by Bloom's trial counsel to obtain a psychiatric expert until days before trial, combined with counsel's failure to adequately prepare his expert and then present him as a trial witness, was constitutionally deficient performance").

To be sure, in the order appealed from, the district court stated that precluded Dr. Berlin from testifying as to certain opinions because of the lack of a methodology to support them rather than because he failed to bring scientific literature with him; thus, the court below concluded that further preparation would not have made a difference. What the district court overlooked, however, was that the literature cited in Dr. Berlin's affidavit *would have provided the very methodology* that it had found, at the <u>Daubert</u> hearing, to be missing. While Dr. Berlin's opinions could not be precisely quantified - such precise measurement is rarely possible in the social sciences - the articles would have shown that there was indeed a baseline of data and statistics from which his opinions were drawn, and that they were not simply his *ipse dixit*.[5]

Notably, the district court did not dispute that Dr. Berlin's proposed opinions

---

[5] Indeed, at page 8 of defendant's reply papers (A641), he specifically stated that, had Dr. Berlin been better prepared, he would have been able to overcome "the Court's objection (*i.e., the absence of proof of a scientific basis for his opinions*)" (emphasis added). Defendant's ineffective assistance argument was thus directed to the overall failure to instruct Dr. Berlin to provide scientific proof to support his opinions, rather than merely the absence of peer-reviewed literature at the <u>Daubert</u> hearing.

concerning Internet Fantasy were an appropriate *topic* for expert testimony or that, if he had cleared the <u>Daubert</u> threshold, he would have been permitted to testify to them. Nor could it so dispute, given that numerous other circuits have found that such testimony is appropriately received in child enticement cases, <u>see</u> <u>United States v. Hofus</u>, 598 F.3d 1171, 1180 (9th Cir. 2010) (expert "testified extensively about the large number of people who engage in sexual texting or chat rooms for pure fantasy"); <u>United States v. Grauer</u>, 805 F. Supp. 2d 698, 708 (S.D. Iowa 2011) (noting that defense expert testified that the defendant's Internet chats were consistent with fantasy), and even that it is reversible error to exclude such testimony on relevance grounds, <u>see</u> <u>United States v. Gladish</u>, 536 F.3d 646, 650 (7th Cir. 2008); <u>United States v. Joseph</u>, 542 F.3d 13 (2d Cir. 2008).[6]

---

[6] Nor does the argument made by the Government in the papers below – that an expert may not testify as to a defendant's culpable mental state even through hypotheticals – hold water. This argument misapprehends the nature of Dr. Berlin's proposed testimony, because Dr. Berlin would not have been called to testify about defendant's intent. Nor would Dr. Berlin have been called to "testify regarding some hypothetical group and then make the claim that [Dr. Friedlander] didn't meet the group's characteristics." That type of "profiling" and/or propensity evidence was not what defendant proposed to present. Instead, as made clear during the Daubert hearing, Dr. Berlin would have testified about the prevalence and character of sexual fantasy that exists on the Internet, and would have testified that defendant did not meet the diagnostic criteria for pedophilia and sexual sadism. This testimony would not have impinged upon the ultimate issue of intent; instead, it would have provided the jury with the *context* - much of which would have been unknown or counterintuitive to lay jurors who are unfamiliar with deviant sexual fantasies - to make their own determination of defendant's intent.

-36-

Moreover, as to prejudice, this is not a case in which the evidence of the defendant's intent was overwhelming. Indeed, there was substantial evidence before the jury to support a finding that defendant was engaging in fantasy. Many of the statements he made to Corporal Romanosky during the phone calls and Internet chats were demonstrably untrue, e.g., his statement that he had abused his son (he had no children) or that he had a torture room in his basement (he had no basement). Defendant had no record of contact offenses or even inappropriate approaches to children despite working at a school, and the various sadomasochistic photographs and/or e-mail correspondence found on his computer related to adults. No child pornography was found on his computer and there was no evidence of children or children's belongings in his residence. Hence, there is a significant chance that, if the world of Internet fantasy had been placed in context for the jurors and/or they had been informed that Dr. Friedlander did not meet the diagnostic criteria for being a pedophile or sexual sadist, the trial would have had a more favorable outcome.

In this regard, it should be noted that all defendant need show in order to establish ineffective assistance is a "reasonable probability" of a different outcome,

---

See United States v. Hofus, 598 F.3d 1171, 1180 (9th Cir. 2010) (noting that expert was permitted to testify as to the prevalence of fantasy on the internet and that the defendant lacked the characteristics of a hebophile, albeit not to the ultimate issue of the defendant's intent).

which is "a fairly low threshold." Riggs v. Fairman, 399 F.3d 1179, 1183 (9th Cir.

2005), citing Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir.1994). In particular, the

reasonable probability standard does not require that prejudice be demonstrated by a

preponderance of the evidence. Kyles v. Whitley, 514 U.S. 419, 434 (1995). Courts

have accordingly held that a reasonable probability "may be less than fifty percent."

Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002); United States v. Bowie, 198 F.3d

905, 908-09 (D.C. Cir. 1999) (same); United States v. Vargas, 709 F. Supp. 2d 48, 50

(D.D.C. 2010) (same); United States v. Nelson, 921 F. Supp. 105, 120 (E.D.N.Y.

1996) (finding that 33 percent chance amounted to a reasonable probability). Indeed,

it has been held that a reasonable probability exists whenever the chances of a

different outcome are "better than negligible," United States ex. rel. Hampton v.

Leibach, 347 F.3d 219, 246 (7th Cir. 2003), or if they are "more than mere

speculation." United States v. Berryman, 322 Fed. Appx. 216, 222 (3d Cir. 2009).

The "reasonable probability" standard is also an objective one, which "must

exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like."

Strickland, 466 U.S. at 695. "The assessment of prejudice should proceed on the

assumption that the decisionmaker is reasonably, conscientiously, and impartially

applying the standards that govern the decision [and] *should not depend on the*

*idiosyncracies of the particular decisionmaker*, such as unusual propensities toward

-38-

harshness or leniency." Id. (emphasis added); accord Wellington v. Moore, 314 F.3d 1256, 1269 (11th Cir. 2002). Moreover, the prejudice prong of Strickland, as opposed to the deficient-representation prong, may be adjudicated with the benefit of hindsight. Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Accordingly, all defendant need show to obtain relief on this claim is to demonstrate, *prima facie*, that there is a "better than negligible" chance that, had his counsel better prepared Dr. Berlin, the psychiatrist would have been permitted to testify to his potent opinions on Internet fantasy as well as his diagnoses as to . Moreover, this "better than negligible" chance must be evaluated without regard to the idiosyncracies of the particular judge who presided over the Daubert hearing. Certainly, in light of the low "reasonable probability" threshold, defendant has made this showing. This Court should therefore determine that defendant's attorneys were ineffective in this regard or, at minimum, that this ineffectiveness claim is of sufficient weight to warrant a full evidentiary hearing.

## B.    Failure to Present Mitigating Psychiatric Evidence at Sentencing.

It was also, clearly, ineffective for counsel not to call Dr. Berlin or present a report from him in aid of sentencing. It is settled law that an attorney is obliged to present mitigating evidence in his client's favor at sentencing, and that failure to do so may be charged as ineffective assistance. See, e.g., Wiggins v. Smith, 539 U.S. 510

(2003) (ineffective assistance where counsel failed to present mitigating evidence that he knew existed and that there was no risk to presenting); accord Williams v. Taylor, 529 U.S. 362 (2000); Rompilla v. Beard, 545 U.S. 374 (2005).[7]

Here, as noted above, Dr. Berlin could have presented extensive mitigating proof that was not otherwise before the sentencing court, including an assessment of Dr. Friedlander's future dangerousness and risk of reoffense (or lack thereof), discussion of treatment strategies, and discussion of measures such as a computer/Internet ban combined with supportive therapy that could be taken to supervise and monitor Dr. Friedlander in the community to ensure that he posed no risk to children. Since future risk was critical to any sentence imposed by the district court – and particularly to whether the sentence imposed should be one that guaranteed death in prison rather than one that held out hope of release – a professional psychiatric assessment was sorely needed and could have been of assistance to the court. There can be no valid strategic justification for eschewing such critical testimony from an expert already involved in the case, in favort of cumulative character evidence from witnesses who had already submitted letters (and which the district court had warned counsel not to elicit).

---

[7] Although these were capital cases, the Strickland standard also requires counsel to present mitigating evidence and arguments in the non-capital context. See, e.g., United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000).

Moreover, the reasoning that Mr. Tragos and Mr. Sartes gave for not calling Dr. Berlin, and which the district court adopted – that the court had already heard from and rejected the psychiatrist – is insufficient on its face. This is because his sentencing testimony *would have focused on different topics* from the opinions that the district court had heard at the <u>Daubert</u> hearing.

Plainly, any competent counsel would recognize that, particularly in the post-<u>Booker</u> era, trial and sentencing are distinct phases of a case, and that testimony which bears on issues of culpability is often of marginal relevance to a sentencing court's analysis of the 18 U.S.C. § 3553(a) factors. The choice to dispense with expert testimony at sentencing simply because the court has already heard from the expert *regarding trial issues* is simply not within the bounds of professional strategy, especially in a sex offense case where future dangerousness and the possibility of reoffense if released to the community is an ever-present concern. The testimony that Dr. Berlin had already given regarding Internet fantasy and the diagnostic criteria for pedophilia and sexual sadism did not touch on the conditions under which Dr. Friedlander might (or might not) repeat his behavior, the measures that might be taken to prevent recurrence, or the likelihood that supervisory measures and/or therapy would be sufficient to allow defendant to live at liberty.

Likewise, the district court's statement at the time of sentencing that it had

-41-

heard from Dr. Berlin and that it was skeptical of his testimony regarding Internet fantasy was directed to the culpability-related proof presented at the <u>Daubert</u> hearing, and not to the testimony that could have been given in aid of sentencing. Indeed, the sentencing court could not possibly have expressed skepticism regarding testimony it had never heard. Indeed, the district court's reliance on this rationale to deny Section 2255 relief to the defendant is puzzling given its acknowledgment, earlier in the decision, that Dr. Berlin's sentencing testimony would not have involved the same opinions that it had heard before.

Clearly, given the relatively low bar set by the "reasonable probability" standard (as discussed above), there is a reasonable probability that, had counsel proffered Dr. Berlin to testify regarding defendant's low risk of re-offense and the likelihood that any residual risk could be overcome via supervision and therapy, it would have imposed a sentence substantially lower than the 30 years that were in fact imposed, and might have imposed a sentence at or close to the 10-year minimum which would have allowed a realistic possibility of release. It should also be noted that, as discussed above, such a reasonable probability must be evaluated objectively and without regard to the harshness and/or leniency of a particular decision-maker; thus, the question is not whether *the particular district judge assigned to this case* would have changed its mind (an assessment which in any event is laden with the

-42-

potential for confirmation bias), but whether a hypothetical reasonable judge within the Middle District of Florida might have found that Dr. Friedlander's advanced age and physical disability, combined with the testimony Dr. Berlin might have given, warranted a sentence short of a de facto life term.  Such a likelihood exists here, and counsel's failure to present mitigating medical proof at sentencing was ineffective.

## C.    Conclusion.

Defendant submits that, for the above reasons, he is entitled to relief on the ground of ineffective assistance of counsel.  Notably, "Supreme Court precedent suggests that a district court analyzing an ineffective assistance of counsel claim should look at the individual allegations of ineffective assistance and their cumulative effect." Hammonds v. Allen, 849 F. Supp. 2d 1262, 1306 (M.D. Ala. 2012) (emphasis added), citing Williams v. Taylor, 529 U.S. 362, 398 (2000); Strickland, 466 U.S. at 690.  Even if either of the above claims standing alone are insufficient to warrant relief – which they plainly are – then their cumulative effect surely does.

Moreover, defendant submits that this Court may make this determination without the need for a hearing, and may vacate defendant's conviction and sentence based on the briefs alone.  As noted above, the Tragos and Sartes affidavits do not truly contradict Dr. Berlin's allegations with respect to the Daubert hearing, and the reason they allege for not calling Dr. Berlin at sentencing is invalid on its face.  There

are thus no material factual disputes which stand in the way of granting relief, and this Court should issue a decision unconditionally granting defendant's Section 2255 motion.

But even if this Court does find that material factual disputes exist, there is clearly no basis for finding that the Government's submissions "conclusively" show that defendant is entitled to no relief, as would be required to deny the motion without a hearing under 28 U.S.C. § 2255(b). Certainly, the Tragos and Sartes affidavots do not form a proper basis for doing so. As this Court has stated:

> The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*-not prove-reasonably specific, non-conclusory facts that, if true, would entitle him to relief. If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous, the district court is required to hold an evidentiary hearing. It is in such a hearing that the petitioner must offer proof.

Aron v. United States, 291 F.3d 708, 714 n.6 (11th Cir. 2002) (emphasis in original); accord Taylor v. United States, 487 F.2d 307 (2d Cir. 1973) ("an opposing affidavit by the Government is not part of 'the files and records of the case' which can be taken to 'conclusively show that the prisoner is entitled to no relief'"); see also 3 Charles Alan Wright, Federal Practice and Procedure, § 599 (2d ed.1982).

Here, the papers that defendant submitted to the district court contained specific

-44-

and detailed allegations regarding the ineffective assistance provided by his trial and appellate attorneys, George Tragos and Peter Sartes. As discussed above, these allegations, if proven true, establish a *prima facie* entitlement to relief. Accordingly, even if this Court determines that unconditional relief cannot be granted on this record, it should at minimum reverse the decision below to the extent of remanding for an evidentiary hearing.

## POINT II

## DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

This Court should also find that defendant received deficient representation on appeal. Defendants are entitled to effective assistance of counsel on direct appeal as well as trial. See Anders v. California, 386 U.S. 738 (1967); Jones v. Barnes, 463 U.S. 745 (1983). As noted above, such claims are judged under the Strickland standard. Smith v. Robbins, 528 U.S. 259, 287 (2000). This requires the defendant to show that "the ignored issues are clearly stronger than those presented" on appeal. Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986), quoted in Smith, 528 U.S. at 288.

That standard is plainly met here with respect to the failure to raise on appeal the issue of whether the Port St. Lucie chats were properly considered "relevant conduct" and treated as a separate count of conviction for purposes of the grouping

rules. Defendant acknowledges, as discussed in the Statement of Facts, that his appellate counsel filed a brief which argued six appellate issues. It is plain, however, that none of these issues were nearly as strong as the Sentencing Guideline issues that counsel declined to raise, because those issues were unpreserved, subject to extremely stringent standards of review, clearly without merit, or at best plainly harmless.

For instance, it was painfully clear that any error in Corporal Romanosky's "ultimate issue" testimony was harmless, given that (a) the conduct under discussion – i.e., physical and sexual abuse of prepubescent minors – would clearly have been illegal if committed; and (b) the defendant did not even contest the legality element of the offense at his trial. The expert testimony issue was largely unpreserved and hence reviewable only under the extraordinarily difficult plain error standard. The Rule 404(b) issue was unlikely to prevail as it was subject to an abuse-of-discretion standard of review and concerned an area in which courts are historically afforded great deference. See United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003) (cited by this Court in affirming the instant conviction). The Double Jeopardy Clause claim was self-evidently meritless in the absence of any evidence that the mistrial had been deliberately provoked by the Government. See United States v. Shelley, 405 F.3d 1195, 1200 (11th Cir. 2005). And the as-applied constitutional claim was not merely meritless but – as acknowledged in the defendant's brief – was foreclosed by

-46-

governing Eleventh Circuit precedent. (A496-97) (conceding that the point raised on appeal was contrary to <u>United States v. Murrell</u>, 368 F.3d 1283, 1287 (11th Cir. 2004)).[8]

Moreover, the final point raised – and the sole sentencing point made in the brief – was limited to substantive reasonableness.  Under <u>Gall v. United States</u>, 552 U.S. 38 (2007) and its progeny – which were or should have been well known to counsel at the time the appeal was litigated – substantive reasonableness challenges are reserved for only the most extraordinary and egregious of cases.  This Court has never found a sentence in a sex offense case involving children to be unreasonably high, as its stated opinion (in a decision rendered prior to the filing of Dr. Friedlander's brief on direct appeal) is that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses," and "lengthy sentences in these cases are substantively reasonable."  <u>See</u> <u>United States v. Sarras</u>, 575 F.3d 1191, 1220 (11th Cir. 2009) (collecting cases). Indeed, the only instance in which this Court has upheld a substantive reasonableness challenge to a sex-crime sentence is <u>United States v. Irey</u>, 612 F.3d 1160 (11th Cir. 2010) (en banc), where it found a below-Guideline sentence unreasonably *low*.  Moreover, the <u>Irey</u> court cited several

_____

[8] The as-applied point also incorporated a sufficiency argument which sought reversal based on evidence that posed quintessential jury issues, and which did not discuss the legal standard applicable to sufficiency claims. (A494-96).

-47-

cases, decided prior to the filing of the brief in this case, which upheld long sentences for defendants with ages similar to that of Dr. Friedlander.  See id. at 1206.

Notably, while both Mr. Tragos and Mr. Sartes attested in their affidavits that they chose what they believed to be the strongest issues for appeal, they did so only in conclusory terms, and particularly fail to address why they would have raised a substantive reasonableness point in a child sex-offense case, why they argued a constitutional point that had been rejected by this Court as well as every other circuit to consider it, and/or why they chose to litigate issues that a cursory review of governing case law would have revealed to be without merit. (A611, 633).

Thus, it cannot be said that the brief filed by counsel on direct appeal "present[ed] other *strong* issues" that would have excused the failure to litigate the meritorious Sentencing Guideline points.  See Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (emphasis added).  Instead, the brief contained a litany of *weak* issues, including at least one that was actually contrary to controlling precedent. While defendant does not dispute that the task of a competent appellate counsel includes "winnowing" weak issues from strong ones, the "winnowing" process is not served by doing what counsel did here, and winnowing out the *strongest* claims in favor of the weaker ones.  This is especially true given that the brief filed by attorneys Tragos and Sartes was 11,679 words long (A515), which was well under the 14,000-

word limit applicable to principal briefs, meaning that there was ample room to raise another meritorious point.

And the point would clearly have been meritorious, because the Port St. Lucie chats were not relevant conduct as that term is understood in the Sentencing Guidelines.  As a threshold matter, Dr. Friedlander's sentencing counsel was correct in arguing that the Port St. Lucie conduct did not even rise to the level of an attempt to commit a crime, because it consisted solely of Internet discussions and no steps were taken toward setting up a meeting.  Indeed, it is undisputed that Dr. Friedlander continually made excuses when Defendant Spector attempted to arrange a meet-up. The mere fact that the Internet discussion contained sexual content, and that it involved transmission of a fully clothed and non-salacious photograph of defendant as well as typed chats, does not take it beyond the level of discussion, particularly where, as here, the defendant did not interact directly with a fictitious minor and there is no possible issue of "grooming."

Courts throughout the country have held that Internet discussion alone – or even, in some cases, Internet discussion combined with planning – does not rise to the level of an attempt, and indeed, the court in United States v. Gladish, 536 F.3d 646, 648-50 (7th Cir. 2008) explicitly held this to be the case even if the conversation is explicit and even if sexually charged photographs are transmitted.  "Treating speech

-49-

(even obscene speech) as the 'substantial step' would abolish any requirement of a substantial step." Id. at 650; see also United States v. Winckelmann, 70 M.J. 403, 408 (C.A.A.F. 2011) (sexually explicit Internet chat did not constitute substantial step); accord United States v. Erickson, 2012 WL 4194504, *3 (D. Nev. 2012); United States v. Nitschke, 843 F. Supp. 2d 4, 14-16 (D.D.C. 2011). Thus, for this reason alone, an appellate point based on the Port St. Lucie chats would have resulted in reversal.

But in any event, the interaction with Detective Spector was improperly grouped because it was not "relevant conduct" with respect to the instant defense, as that term is defined in U.S.S.G. § 1B1.3. Where, as here, criminal activity was not "jointly undertaken," relevant conduct consists of the following acts and omissions:

> (a) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant… *that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense*;
>
> (b) *solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts*, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> (c) all harm that resulted from the acts and omissions

> specified in subsections (a)(1) and (a)(2) above, and all
> harm that was the object of such acts and omissions.

U.S.S.G. § 1B1.3 (emphasis added).

The Port St. Lucie conduct falls into none of these categories. It was neither an integral part of the instant offense, preparation for that offense nor an attempt to avoid detection or responsibility. Moreover, because sex offenses are not subject to grouping under U.S.S.G. § 3D1.2(d),[9] the Spector chats cannot be considered relevant simply because they may arguably have been part of a common scheme or plan. Furthermore, the interaction with Detective Spector did not, by any reasonable measure, "result from" the discussions with Corporal Romanosky. Rather than being part of the instant offense, the conversations with Detective Spector were entirely separate conduct that simply happened to overlap in time. The mere fact that it was similar in character does not render it sufficiently relevant to be grouped for Sentencing Guideline purposes and to add to Dr. Friedlander's offense level.

Notably, the district court's finding to the contrary was based solely on cases that involved offenses which were groupable under U.S.S.G. § 3D1.2(d). Both United States v. Maxwell, 34 F.3d 1006 (11th Cir. 1994) and United States v. Buchanan, 299

---

[9] This guideline requires aggregation of multiple counts where the Guideline level is largely dependent upon a quantity-related factor, such as financial loss or volume of drugs.

Fed. Appx. 903 (11th Cir. 2008) involved drug quantity calculations, and both of them specifically cited U.S.S.G. § 1B1.3(a)(2), which does not apply to this case, in support of their holdings.  Likewise, Comment 9(b) to the guideline, which the district court also cited, is a definition of "course of conduct" and is thus applicable only to offenses for which a "course of conduct" relevant conduct analysis applies, which this offense is not.  Indeed, as noted above, the district court itself stated, at the time of sentencing, that U.S.S.G. § 1B1.3(a)(2) was inapplicable, and the Government disclaimed reliance on that guideline, rendering it all the more incongruous that the court would rely upon such authority in sustaining the use of the Port St. Lucie chats as relevant conduct.

Where, as here, the offense conduct is not subject to Section 3D1.2(d) grouping, the court in United States v. Wernick, 691 F.3d 108, 114-15 (2d Cir. 2012) has explicitly held that temporal proximity and similarity are *not* enough to bring uncharged acts within the scope of relevant conduct.  Citing an earlier case, United States v. Ahders, 622 F.3d 115, 122 (2d Cir. 2010), the court held that "the Guidelines do not define 'relevant' as 'during' in a purely temporal sense."  Wernick, 691 F.3d at 115.[10]  The court accordingly noted that because there was no nexus between the

---

[10] Although Wernick had not been decided yet at the time this Court decided the direct appeal of the instant case, Ahders had been, and moreover, the relevant principles could easily be discerned from the plain language of the Guideline. Accordingly, the relevant principles were available to counsel at the time of the appeal and could have been cited to this Court.

charged and uncharged conduct in Wernick's case - e.g., that Wernick did not "use the fact of his pursuit of sex with children" as an act of persuasion during his child enticement - the one could not be treated as relevant conduct to the other.  Id.[11]

The same result obtains here, where defendant's uncharged interaction with Detective Spector was independent of his charged interaction with Corporal Romanosky.  He did not, for instance, brag about his interaction with Detective Spector in order to gain Corporal Romanosky's trust or to advance his alleged goal of having sex with the corporal's purported children.  The two courses of conduct never met; instead, they were simply similar in character and occurred at the same time, which did not make them "relevant."

Hence, had counsel raised this issue on appeal in preference to the meritless issues they did raise, defendant's sentence would have been vacated on appeal,[12]

---

[11] The sentencing court also, as in the instant case, found that additional acts of uncharged alleged child enticement as relevant conduct.  Wernick did not challenge that finding on appeal and, hence, the Second Circuit did not pass on it.  However, it is clear from the Second Circuit's analysis that, if Wernick *had* challenged the treatment of the uncharged child enticement as relevant conduct, he would have been successful.

[12] Finally, defendant respectfully submits that this Court should expand the certificate of appealability to encompass his claim regarding the application of the grouping rules to the two fictitious "minors" offered by Corporal Romanosky, given that the number of minors was not material to the offense and that the inflation of the number of minors constituted impermissible sentencing manipulation.  See United States v. Sanchez, 138 F.3d 1410, 1414 (11th Cir.

and he would have been remanded for resentencing at a lower level, which, given that both of his parents lived into their nineties, could have given him a chance to be released from prison someday and to die at home.  Thus, since "any amount of actual jail time has Sixth Amendment significance," Glover v. United States, 531 U.S. 198, 203 (2001), this Court should find that the prejudice prong of Strickland has been satisfied and that defendant is entitled to relief on the ground of ineffective assistance of appellate counsel.

## CONCLUSION

WHEREFORE, in light of the foregoing, this Court should issue an order granting the instant appeal in all respects, reversing the order below, granting Section 2255 relief to the defendant, vacating defendant's conviction, remanding for a new trial, and granting such other and further relief as it may deem just and proper.

Dated:      New York, NY
            September 20, 2013


                                   /s/ Jonathan I. Edelstein
                                  JONATHAN I. EDELSTEIN

---

1998); United States v. Ciszkowski, 493 F.3d 1264, 1270 (11th Cir. 2007). Defendant submits that the failure to litigate this preserved issue, as well as the Port St. Lucie issue, constituted ineffective assistance.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies pursuant to Fed. R. App. Pro. 32(a)(7)(C) as follows:

1.    This brief complies with the type-volume limitation of Fed. R. App. Pro. 32(a)(7)(B) because it contains 13,145 words exclusive of those parts of the brief exempted by Fed. R. App. Pro. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. Pro. 32(a)(5) and the type style requirements of Fed. R. App. Pro. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Corel Word Perfect 12 in Times New Roman 14-point type.

Dated:    New York, NY
            September 20, 2013

    /s/ Jonathan I. Edelstein
    JONATHAN I. EDELSTEIN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23 2013, one originally signed Brief and six copies, were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

JOHN LEY, CLERK
U.S. COURT OF APPEALS FOR THE 11TH CIRCUIT
56 Forsyth Street N.W.
Atlanta, Georgia 30303

On this same date two copies of the brief was sent to the following for delivery within three calendar days:

TODD B. GRANDY
U.S. ATTORNEY'S OFFICE
400 N Tampa St., Ste. 3200
Tampa, FL  33602-4798
(813) 274-6000

This was also filed through the courts CM/ECF system on September 23, 2013.

Filing and Service were performed by Direction of Counsel

<u>/s/ Robyn Cocho</u>
Counsel Press, LLC
460 West 34th Street
4th Floor
New York, NY  10001
(212) 685-9800